UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Daniel A. Ferrie, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 04-12068 JLT |
| vs. | ) | |
| | ) | |
| K Mart Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, Daniel A. Ferrie ("Ferrie"), by his attorney, and respectfully submits herein his Opposition to the Defendant, K Mart Corporations' ("K Mart's"). K Mart's said motion is without merit should be DENIED because:

1)  Ferrie has proffered sufficient evidence for a fact-finder to conclude that his employment with K Mart was terminated because of his age in violation of the Age Discrimination in Employment Act and Mass.G.L. c. 151B;

2)  Ferrie has proffered sufficient evidence that his employment with K Mart was terminated in retaliation for exercising rights under the Massachusetts Workers Compensation Act.

3)  Ferrie has proffered sufficient evidence for a fact-finder to conclude that his employment with K Mart was terminated for exercising rights under the Family Medical Leave Act; and

I.   STATEMENT OF MATERIAL FACTS AT ISSUE.

Please see Plaintiff's Statement of Material Facts ("P's Facts"), submitted herewith and incorporated by reference, pursuant to Fed.R.Civ.P. 10(c).

1

II.    ARGUMENT.

A.    SUMMARY JUDGMENT.

Summary Judgment is only appropriate where:

the pleadings, depositions, answers to interrogatories, ad admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

Summary judgment is inappropriate where "there is a dispute 'over facts that might affect the outcome of the suit.'" Menard v. First Sec. Servs. Corp., 848 F.2d 281, 285 (1st Cir. 1988)(quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "the evidence, and all reasonable inferences there from, [are viewed] in the light most favorable to the party resisting summary judgment." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). Finally, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment. Id. Also see Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 877 (1st. Cir. 1993).

B.    FERRIE HAS PROFFERED SUFFICIENT EVIDENCE FOR A FACT-FINDER TO CONCLUDE THAT HIS EMPLOYMENT WITH K MART WAS TERMINATED BECAUSE OF HIS AGE.

To establish a prima facie case of age discrimination, a plaintiff must prove that "(1) he is at least forty years of age, (2) he suffered an adverse employment action, (3) his job performance met his employer's legitimate expectations, and (4) the employer had a continuing need for the services provided by the position from which he was discharged." Swana v. Nu Visions Mfg., LLC,  353 F.Supp.2d 153, 157 -158 (D.Mass.,2005).

Once a plaintiff has proven his *prima facie* case, the burden of production shifts back to

2

the employer to articulate a legitimate business justification for the adverse employment action. A plaintiff must then prove that this reason was pretextual. McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802 (1973). In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), the United States Supreme Court, relying upon its decision in St. Mary's Honor Society v. Hicks, 509 U.S. 502 (1993), confirmed in crystal clear fashion that, at the pretext stage of the burden-shifting analysis "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," Reeves, Supra, 530 U.S. at 146, and, quoting Hicks, Supra 509 U.S. at 511, that

> The fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. Reeves, Supra, 530 U.S. at 146.

Regarding Chapter 151B, see Lipchitz v. Raytheon, 434 Mass. 493, 498 (2001) (evidence that at least one of defendant-employer's reason for plaintiff's termination is false enables a jury to infer that the same is a pretext for unlawful discrimination).

Furthermore, it is not determinative that the actual decision maker possessed a discriminatory-based animus against a plaintiff. Evidence that a supervisor acted with such a motive and the supervisor's actions contributed to the stated reasons for termination may be sufficient to defeat summary judgment. Cariglia v. Hertz Equipment Rental Corp. 363 F.3d 77, *88 (C.A.1 (Mass.),2004).

In Cariglia, the plaintiff was allegedly terminated for performance issues. The plaintiff produced evidence that his supervisor, *not the decision-maker* regarding his termination, had an animus against him because of his age. This included, *inter alia*, statements concerning the

plaintiff's age and the fact that he was 'over the hill.' During the investigation leading up to the decision to terminate the plaintiff, his supervisor withheld information which would have exonerated him. Id., at 80-82.

The First Circuit found that when a supervisor because of a discriminatory animus, impermissibly influences a decision-maker's determination to terminate an employee, liability can attach to the employer itself, regardless of whether the decision-maker possessed a discriminatory animus against the Plaintiff. Id., at 85-88. Although Cariglia involved Massachusetts law, the First Circuit relied upon other First Circuit and federal decisions in reaching it conclusion. See, Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir.1987); Cummings v. Standard Register Co., 265 F.3d 56 (1st Cir.2001); Freeman v. Package Machinery Co., 865 F.2d 1331, 1342 (1st Cir.1988) ("[t]he inquiry into a corporation's motives need not artificially be limited to the particular officer who carried out the action."). Compare, Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir.1990) (the "biases of one who neither makes nor *influences* the challenged personnel decision are not probative in an employment discrimination case," implying that the biases of those who do make or influence the employment decision are probative).

In the instant matter, it is clear that Ferrie has submitted sufficient evidence to make out his *prima facie* case. It is not disputed that he is well over forty years of age. **P Facts, ¶ 3.** It is likewise undisputed that Ferrie suffered an adverse employment action, i.e., his involuntary termination. **P Facts, ¶ 16.**

Ferrie has submitted sufficient evidence that he met K Mart's legitimate performance

expectations for his position. He was consistently regarding as exceeding expectations on his performance evaluations, he received numerous awards and recognitions, and was even recognized by his District Manager as doing "a very good job." **P Facts, ¶ 9.**

Finally, it is undisputed that K Mart had a continuing need to replace Ferrie's position, as the store has remained open and K Mart has submitted no evidence that Ferrie's position was eliminated.

Ferrie does not dispute that K Mart has articulated a legitimate reason for his termination. Ferrie has, however, proffered sufficient evidence at the final, pretext, stage of the McDonnell Douglass analysis. As in Cariglia, Supra, Ferrie has proffered evidence that Swank had an age-based bias against him as evidenced by his discriminatory remarks, the fact that Swank never recommended Ferrie for promotion although he felt Ferrie to be a very good employee, had excellent evaluations, had never been disciplined, and the fact that three individuals under forty were promoted ahead of him. **P Facts, ¶¶ 7, 8, 9, 10, 11, 12**.

Ferrie has proffered evidence that, as in Cariglia, Swank conducted (in part) the investigation into the Smart Plan issues, yet failed to inform Hughes that: (1) he and Ferrie had discussed how to eliminate the outstanding balance from the K Mart cash card and he (Swank) agreed to Ferrie's plan; and (2) that Michael Hedlund was a "poor performer" with numerous disciplinary actions against and was in danger of being terminated, and that the other employees who signed statements against Ferrie additionally had a history of poor performance which Swank was aware of. **P Facts, ¶¶ 20, 22, 23, 24, 25.** Again, as in Cariglia, Hughes based his decision to terminate Ferrie in part on the results of Swank's investigation and his communications with Swank. **P Facts, ¶¶ 26-27.**

5

Regarding the stated reasons for Ferrie's termination, it should be noted that *none* of the statements submitted by K Mart in this regard were sworn under the pains and penalties of perjury and are therefore inadmissible hearsay. **P Facts, ¶¶ 29, 30.**

For these reasons, K Mart's motion for summary judgment on Ferrie's age claim is without merit and should be <u>DENIED</u>.

B.     **FERRIE HAS PROFFERED SUFFICIENT EVIDENCE FOR A FACT-FINDER TO CONCLUDE THAT HE WAS TERMINATED IN RETALIATION FOR EXERCISING RIGHTS UNDER THE MASSAHCUSETSS WORKERS COMPENSATION ACT.**

Mass.G.L. c. 152 § 75B states, in pertinent part, that "No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter ...." <u>Id</u>.

In the instant action, it is undisputed that Ferrie exercised rights under the Workers Compensation Act. **P Facts, ¶¶ 13, 14.** It is also undisputed that Ferrie was terminated upon his return to work. **P Facts, ¶ 16.**

Ferrie has proffered sufficient evidence that while on leave from K Mart because of his workplace injury he was called on an almost daily basis by Swank concerning his expected return. Swank repeatedly urged Ferrie to return to work, even though Ferrie repeatedly told him his doctor had not cleared him to do so. Swank became angry when Ferrie told him he would not return to work against doctor's orders. **P Facts, ¶ 15.** As set forth above, Ferrie has submitted sufficient evidence that the reasons given for his termination were pretextual.

For these reasons, Defendant's motion is without merit and should be <u>DENIED</u>.

6

  C.  FERRIE HAS PROFFERED SUFFICIENT EVIDENCE FOR A FACT-FINDER TO CONCLUDE THAT HE WAS TERMINATED BECAUSE HE EXERCISED RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT.

It is not disputed that Ferrie meets the prerequisites for his FMLA claim. K Mart has over 50 employees, Ferrie had worked there for over a year, and he suffered an injury constituting a 'serious health condition' requiring 'continuing treatment by a health care provider.' 29 U.S.C. 2611. Ferrie was therefore entitled to twelve weeks of unpaid leave and return to his same or similar position. 29 U.S.C. 2614(a)(1).

The FMLA makes in unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. 2615(a)(1). It is also unlawful under the FMLA for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. 2615(a)(2).

In the instant action, it is undisputed that Ferrie was not allowed to return to work and was terminated. As set forth above, Ferrie has submitted sufficient evidence that the reasons given for his termination were pretextual.

For these reasons, Defendant's motion is without merit and should be <u>DENIED</u>.

III.     CONCLUSION.

For the foregoing reasons, NEMC's motion for summary judgment is without merit and should therefore be DENIED.

                                      Respectfully Submitted,
                                      Daniel A. Ferrie
                                      By his attorney,

                                      /s/ Paul F. Wood_____
                                      Paul F. Wood, BBO 565195
                                      Law Office of Paul F. Wood, P.C.
                                      45 Bowdoin Street
                                      Boston, MA 02114
                                      (617) 532-2666