UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Daniel A. Ferrie, | ) | |
| | ) | |
|   Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 04-12068 JLT |
| vs. | ) | |
| | ) | |
| K Mart Corporation, | ) | |
| | ) | |
|   Defendant. | ) | |

PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF
MATERIAL FACTS AT GENUINE ISSUE AND UNDISPUTED
FACTS PRECLUDING THE ENTRY OF SUMMARY JUDGMENT

Now comes the Plaintiff, Daniel A. Ferrie, by his attorney, and pursuant to Local Rule 56.1, submits his Statement of Material Facts in opposition to Defendant's motion for summary judgment. Viewing the evidence in the light most favorable to the non-moving party, Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995), Ferrie submits the following:

1. The Plaintiff, Daniel A. Ferrie ("Ferrie"), is a resident of the Commonwealth of Massachusetts, Bristol County. Please see Plaintiff's sworn Charge of Discrimination before the Massachusetts Commission Against Discrimination, attached hereto as **Exhibit 1, ¶ 1.**

2. The Defendant, K Mart Corporation ("K Mart"), is a Michigan corporation, with a principal place of business in Troy, Michigan. Complaint/Answer, ¶ 5.

1

3. At the time of the filing of the Complaint in the within action, Ferrie was 57 years of age. Complaint/Answer, ¶ 6.

4. In or around August, 1998, Ferrie commenced employment with K Mart as an Assistant Manager/Manager in Training and assigned to its South Bay, Boston, Massachusetts store. Complaint/Answer ¶ 7.

5. In the Spring of 1999 Ferrie became aware that, despite his superior performance, younger less experienced managers were being promoted ahead of him. Ferrie complained to his then District Manager, David Nappier, that he was being discriminated against because of his age. **Exhibit 1, ¶ 4.**

6. After his above complaint, Ferrie was subsequently passed over for numerous promotions, including Store Manager and, later, District Manager positions. Virtually all of these positions were given to individuals under 40 years of age. **Exhibit 1, ¶ 5.**

7. Three promotions, specifically, are telling. These involved promotions to the position of District Manager of David Bennett, Charles James, and Daniel Nicolini. All of these individuals were under 40 years of age. Please see Deposition of Jon Swank, attached hereto as **Exhibit 2, pp. 26, 37, 28-29.**

8. In late 2001, for example, Ferrie was told that he would be promoted to District Manager

by Swank. Ferrie was not awarded the position which was given to an individual under 40. **Exhibit 1, ¶ 6.**

9.  Throughout his employment, Ferrie received excellent performance evaluations and numerous awards and recognitions from management. Please see Plaintiff's performance evaluations, attached hereto as **Exhibit 3.** Also please see <u>Affidavit of Daniel A. Ferrie</u>, attached hereto as **Exhibit 4, ¶¶ 2-3.** Ferrie was additionally identified by Swank as doing a "very good job", **Exhibit 2, pp. 22-24.**

10. Swank testified at his deposition that he never recommended Ferrie for promotion. **Exhibit 2, pp. 35, 48.**

11. With the exception of his termination, Ferrie was not subjected to any disciplinary action whatsoever while employed by K Mart. **Exhibit 4, ¶ 4.** Also see transcript of the <u>Deposition of David B. Hughes</u>, K Mart's Fed.R.Civ.P. 30(b)(6) designee, excerpts attached hereto as **Exhibit 5, pp. 36-37.**

12. On numerous occasions during his employment up to and including December, 2003, Ferrie was referred to as an "Old Bastard" and "old and fat" by his District Manager, Jon Swank. **Exhibit 1, ¶ 8.**

13. On or about December 17, 2003 Ferrie suffered a work-related injury to his back.

Complaint/Answer ¶ 16. **Exhibit 2, pp. 70.** Also see Employer's First Report of Injury or Fatality, attached hereto as **Exhibit 6.**

14. Ferrie was out of work until on or about March 1, 2004 when he was cleared to return to work by his doctor. Complaint/Answer ¶ 17. During this period he applied for benefits pursuant to the Massachusetts Workers Compensation Act. **Exhibit 2, pp. 71-72; Exhibit 6.**

15. During Ferrie's leave, Swank called him almost daily concerning his return to work. Swank repeatedly urged him to return against doctor's orders. Swank became upset when Ferrie told him he would not return until released by his doctor. **Exhibit 4, ¶ 5.**

16. On or about March 1 or 2, 2004 Ferrie's employment with K Mart was involuntarily terminated, allegedly for violation of company policy. Complaint/Answer ¶ 19.

17. K Mart claims that Ferrie was terminated for "smart plan manipulation". K Mart's Smart Plan is an extended warranty plan. K Mart contends that Ferrie voided the cash balance on a stolen K Mart cash card by purchasing numerous Smart Plans and thus increase his stores Smart Plan Conversion Rate, or percentage of sales upon which Smart Plans were purchased. Defendant's Statement of Facts, generally.

18. In November, 2003 K Mart Loss Control Manager Nick Macomber informed Ferrie of a

stolen K Mart Cash Card that had been traced to a Nashua, NH K Mart. <u>Defendant's Statement of Facts, ¶¶ 14-15.</u> **Exhibit 4, ¶ 6.**

19. Macomber and Ferrie then agreed to transfer the monies on the card to a new card, reducing the chance the thieves could access the card, and then "kill" the cash balance on the card with a *one-time* purchase of a Smart Plan. This would insure the card could not be accessed. The purchase would then be voided once the thieves were apprehended and/or the issue was settled. **Exhibit 4, ¶ 7.**

20. Ferrie promptly informed Swank and Loss Control District Manager Jon Reeves of the above, who agreed that it was the proper course to take. **Exhibit 4, ¶ 8.**

21. At no time did Ferrie instruct Front End Manager Michael Hedlund or any associates to purchase as many Smart Card plans as possible with the cash card. **Exhibit 4, ¶ 9.**

22. In fact, Hedlund was a "lower performer" and "one of the least effective front end managers" in Swank's district. **Exhibit 2, pp. 32-34.** During his employment with K Mart, Hedlund has received numerous disciplinary actions, including discipline for low Smart Plan sales. **Exhibit 4, ¶ 10.** Also please **Exhibit 7.** PURSUANT TO THE PROTECTIVE ORDER IN THIS MATTER, THIS EXHIBIT IS BEING FILED UNDER SEAL.

23. On at least one occasion Swank instructed Ferrie to terminate Hedlund's employment. **Exhibit 4, ¶ 10.**

24. Marylu Toma, Susan Jones, Lea South, Kenneth Coy and Rosa Rivera had a history of poor performance at the Braintree K Mart. Ferrie had discussed their poor performance with Swank on several occasions. **Exhibit 4, ¶ 11.** Also please see **Exhibit 7.** PURSUANT TO THE PROTECTIVE ORDER IN THIS MATTER, THIS EXHIBIT IS BEING FILED UNDER SEAL.

25. Although Swank, in part, conducted the 'investigation' concerning the alleged Smart Card manipulation, he did not reveal the above communications with Ferrie nor Hedlund's poor performance and disciplinary actions, including performance issues and disciplinary action concerning poor Smart Card sales. See, Synopsis of Investigation dated December 20, 2003, Defendant's Exhibits, Tab 9, document nos. KMART 000100 – 000101.

26. At the time of Ferrie's termination from K Mart, David B. Hughes was the Regional Human Resource Director, and Mary Jo Duffy was the Regional Vice President for K Mart's Northeast Region. Please see Deposition of David B. Hughes, excerpts attached hereto as **Exhibit 5, pp. 17-19.**

27. Hughes testified at his deposition that he and Duffy made the decision to terminate Ferrie after, *inter alia*, he spoke with Swank and reviewed the investigation conducted (in part)

by Swank. **Exhibit 5, pp. 23, 25-26.**

28. At no time did Ferrie ever instruct Front End Associates to enter Smart Plan sales without the customer's knowledge. **Exhibit 4, ¶ 12.**

29. None of the submitted statements of Hedlund and the K Mart Associates concerning Ferrie's alleged conduct were sworn under the pains and penalties of perjury. Defendant's Exhibits, Tabs 7-9.

30. The submitted statement by Donna Mastroeni concerning Ferrie's conduct was not sworn under the pains and penalties of perjury. Defendant's Exhibits, Tab 9.

Respectfully submitted,
Daniel A. Ferrie
By his attorney,

/s/ Paul F. Wood
Paul F. Wood, BBO No. 565195
Law Office of Paul F. Wood
45 Bowdoin Street
Boston, MA 02114
(617) 532-2666