**EXHIBIT 4**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Daniel A. Ferrie, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 04-12068 JLT |
| vs. ) | |
| ) | |
| K Mart Corporation, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF DANIEL A. FERRIE

**I, Daniel A. Ferrie, do upon my oath depose and state:**

1. My name is Daniel A. Ferrie, and I am the Plaintiff in the within action.

2. During my employment I received excellent performance evaluations, true copies of which are submitted with my opposition to Defendant's summary judgment motion.

3. I also received numerous awards and recognitions during my employment with K Mart, including: Pacesetter of Years, Chairman's Club Notices, letters from the City of Somerville in recognition of my community involvement on behalf of K Mart, and letters of commendation concerning outstanding Sales Results.

4. With the exception of my termination, I was not subjected to any disciplinary action while employed by K Mart.

5. During my leave on account of my workplace injury, Jon Swank called me on an almost daily basis concerning my return to work. Swank repeatedly urged me to return to work,

even though I repeatedly told him it was against my doctor's orders. Swank became upset when I informed him I would not return until released by my doctor.

6. In November, 2003 K Mart Loss Control Manager Nick Macomber informed me of a stolen K Mart Cash Card that had been traced to a Nashua, NH K Mart.

7. Macomber and I agreed to transfer the monies on the card to a new card, reducing the chance the thieves could access the card, and then "kill" the cash balance on the card with a *one-time* purchase of a Smart Plan. This would insure the card could not be accessed. The purchase would then be voided once the thieves were apprehended and/or the issue was settled

8. I promptly informed Swank and Loss Control District Manager Jon Reeves of the above, who agreed that it was the proper course to take.

9. At no time did I ever instruct Front End Manager Michael Hedlund or any associates to purchase as many Smart Card plans as possible with the cash card.

10. Michael Hedlund was a poor performing Front End Manager, and I disciplined him numerous times because of his performance, including poor Smart Card Sales. I routinely discussed Hedlund's poor performance with Swank. On one occasion Swank instructed me to terminate Hedlund.

11. Marylu Toma, Susan Jones, Lea South, Kenneth Coy and Rosa Rivera had a history of poor performance at the Braintree K Mart. I had discussed their poor performance with Swank on several occasions.

12. At no time did I ever instruct Front End Associates to enter Smart Plan sales without the customer's knowledge. In fact, I had previously disciplined each of the Associates concerning performance issues.

SIGNED THIS 10TH DAY OF OCTOBER, 2005, UNDER THE PAINS AND PENALTIES OF PERJURY.

_____
Daniel A. Ferrie

MaryLu Toma, Susan Jones, Lei Soto, Kenneth Coy, and Rosa Rivera had a history of poor performance at the Braintree K-Mart. I had discussed their poor performance with Swank on several occasions.

12. At no time did I ever instruct Front End Associates to enter Smart Plan sales without the customer's knowledge. In fact, I had previously disciplined each of the Associates concerning performance issues.

SIGNED THIS 10TH DAY OF OCTOBER, 2005, UNDER THE PAINS AND PENALTIES OF PERJURY.

*[signature]*
Daniel A. Ferrie