UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DANIEL A. FERRIE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 04-12068-JLT |
| | * | |
| KMART CORPORATION, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

August 21, 2006

TAURO, J.

Plaintiff Daniel A. Ferrie[1] ("Plaintiff") filed this action against Defendant Kmart Corporation[2] ("Kmart"), alleging that Kmart: (1) discriminated and retaliated against Plaintiff in violation of the Age Discrimination in Employment Act[3] ("ADEA"); (2) retaliated against Plaintiff for exercising his rights under the Family and Medical Leave Act[4] ("FMLA"); (3) discriminated and retaliated against Plaintiff in violation of Massachusetts General Laws Chapter 151B ("Chapter 151B")[5]; and (4) retaliated against Plaintiff for exercising his rights under the

---

[1] Plaintiff Daniel Ferrie was born in 1947 and is a resident of Massachusetts.

[2] Defendant Kmart is a Michigan corporation with a principal place of business in Troy, Michigan.

[3] See 29 U.S.C. §§ 621-634 (2006).

[4] See id. §§ 2601-2654.

[5] See Mass. Gen. Laws c. 151B, § 4 (2004).

Massachusetts Workers' Compensation Act[6] in violation of Massachusetts General Laws Chapter 152, § 75B.  Kmart has moved for Summary Judgment on all claims.  For the reasons set forth below, Kmart's Motion for Summary Judgment is ALLOWED.

## Background

On July 16, 1998, Kmart hired Plaintiff as a Pacesetter Manager in training at its Braintree, Massachusetts store.[7]  Six months later, on August 27, 1998, Kmart transferred Plaintiff to its South Bay store in Dorchester, Massachusetts.  Plaintiff worked at the South Bay location for approximately two years where he began as the Assistant Soft Lines Manager,[8] earned a promotion to Hard Lines Manager,[9] earned a second promotion to Replenishment Manager,[10] and earned a third promotion to Store Manager pro tem.[11]  On October 1, 2000, Kmart transferred Plaintiff to its Somerville, Massachusetts store where he served as the Store Manager through May 2001.  Kmart then transferred Plaintiff to its Fall River, Massachusetts store, where he served as the Store Manager until September of 2001.  On September 27, 2001,

---

[6] See Mass. Gen. Laws c. 152.

[7] The following undisputed facts are drawn from Pl.'s Compl., Def.'s Ans., Def.'s Mem. in Supp. of Mot. for Summ. J., Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J., and the evidentiary materials submitted in support.

[8] In this position, Plaintiff was responsible for all categories of clothing at the South Bay Kmart store.

[9] In this position, Plaintiff was responsible for all health and beauty aids, tools, toys and equipment products sold at the South Bay Kmart store.

[10] In this position, Plaintiff was responsible for the operational logistics of the South Bay Kmart store.

[11] In this position, Plaintiff served as the "store manager in waiting."

Kmart transferred Plaintiff back to the Braintree, Massachusetts store, where he served as the Store Manager until Kmart terminated his employment on March 2, 2004. Plaintiff claims that during this time period, in 2001, three individuals were promoted to District Manager ahead of him.

On December 17, 2003, Plaintiff suffered a work-related back injury, which rendered him physically unable to work until March 1, 2004. During this period, Plaintiff applied for benefits under the Massachusetts Workers Compensation Act.[12] Plaintiff never applied for or requested leave or other benefits under the Family and Medical Leave Act. Plaintiff returned to work at Kmart's Braintree store on March 1, 2004. Kmart terminated Plaintiff on March 2, 2004. On June 15, 2004, Plaintiff filed a complaint against Kmart with the Massachusetts Commission Against Discrimination.

Kmart terminated Plaintiff because of his misconduct while Store Manager regarding the sale of Kmart "Smart Plans" at the Braintree store. A Kmart Smart Plan is an extended warranty that is available for purchase on certain products, most notably electronics. Any customer who purchases a product on which a Smart Plan is offered may also choose to, but is not required to, purchase a Smart Plan warranty for an additional cost. Kmart encourages Store Managers to maintain an appropriate "conversion rate" of Smart Plan warranties on all eligible items in their stores.[13]

On November 30, 2003, Kmart's Loss Prevention Manager Nicholas Macomber

---

[12] See Mass. Gen. Laws c. 152.

[13] Kmart strives for a conversion rate of approximately 16%, which means that customers buy Smart Plans for 16% of the eligible items sold.

("Macomber") identified suspicious purchases on two Kmart Cash Cards.[14]  Macomber discovered that the two Cash Cards were purchased with a stolen credit card from another Kmart store.  Macomber approached Plaintiff with the results of his investigation and suggested that they eliminate the remaining balances on the two Cash Cards.  Plaintiff, in response, suggested that Macomber purchase Smart Plans with the Cash Cards to eliminate the cards' balances and to improve the Braintree store's poor Smart Plan conversion rate.  Plaintiff made a similar suggestion to Front End Manager Michael Hedlund, instructing him to buy as many Smart Plans as he could with the cards.  Hedlund complied with Plaintiff's suggestion and in less than two weeks, between December 1, 2003 and December 12, 2003, bought over one hundred thirty-five $2.99 Smart Plans offered on inexpensive watches, ranging from $1.90 to $10.

Kmart's Treasury Department discovered the suspicious Smart Plan purchases and began an audit investigation to review those purchases.  Donna Mastoeni, of Kmart's Audit Services Department, and Jon Reeves, Kmart's Loss Prevention District Manager, conducted the investigation.  After interviewing several Kmart employees, Mastroeni and Reeves discovered that Hedlund, on Plaintiff's orders, had purchased one hundred thirty-five Smart Plan warranties on Kmart Cash Cards and that Plaintiff had instructed several cashiers to automatically ring in Smart Plans in customer transactions without informing the customer.  Several Kmart employees indicated that they feared Plaintiff would fire them if they did not comply with his instructions.  On December 21, 2003, Mastroeni and Reeves forwarded their findings to Kmart's Regional Vice Presidents Mary Jo Duffy and David Hughes.  Kmart, however, could not complete the

---

[14] A Kmart Cash Card is a plastic card on which a pre-paid amount of money is credited. Each time the Cash Card is used to make a purchase, the amount of the purchase is subtracted from the amount of money credited on the card.

investigation until Plaintiff returned to work and provided a statement.

On March 1, 2004, Plaintiff returned to work. Plaintiff's new District Manager, Mike Hawd, interviewed Ferrie as to the Smart Plan accusations. Ferrie gave both a hand-written and typed statement indicating he knew that purchases of Smart Plans were being made using the stolen Kmart cash cards, but that he had no recollection of ever instructing cashiers to automatically ring in Smart Plans without asking customers. After reviewing all of the statements collected during the investigation, Regional Vice Presidents Duffy and Hughes terminated Plaintiff's employment on March 2, 2004.

Plaintiff alleges that beginning in the spring of 1999, Kmart continually promoted younger, less experienced managers ahead of him. Plaintiff, more specifically, alleges that throughout his employment Kmart repeatedly denied him Store Manager and District Manager positions in favor of individuals under forty years of age. Plaintiff alleges that Kmart engaged in a pattern of age discrimination and retaliation that culminated in the termination of his employment, and that the Smart Plan manipulation charges are merely a pretext. Plaintiff, therefore, brings these claims alleging that Kmart's actions constituted unlawful age discrimination and retaliation for exercising his rights under workers' compensation law and the FMLA.

## Discussion

**I.  Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has

demonstrated an] entitle[ment] to a judgment as a matter of law."[15] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[16] In deciding whether to allow a motion for summary judgment, a court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."[17] A court, however, need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation."[18]

## II. Discrimination-Retaliation Analysis

All of Plaintiff's claims fall under the McDonnell Douglass analytic framework utilized in employment discrimination cases.[19] Plaintiff must first establish a *prima facie* case. To establish a *prima facie* case for age discrimination claims, Plaintiff must show that: 1) Plaintiff was at least

---

[15] Fed. R. Civ. P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

[16] Blackie, 75 F.3d at 721 (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

[17] Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

[18] Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

[19] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (applying framework to ADEA); Wheelock College v. Massachusetts Commonwealth Against Discrimination, 355 N.E.2d 309, 314-15 (Mass. 1976) (Chapter 151B); Fallon v. Fed. Express Corp., 2002 WL 31677216, at *5 (Mass. Super. Oct. 11, 2002) (applying and collecting authorities applying this analytical framework to workers' compensation retaliation claim).

forty years of age; 2) Plaintiff met Kmart's "legitimate job performance expectations"; 3) Plaintiff "experienced adverse employment action;" and 4) Plaintiff "was replaced by a person with roughly equivalent job qualifications."[20] The person who replaces Plaintiff must also be "substantially younger."[21] To establish a *prima facie* case for retaliation Plaintiff must show that: 1) he engaged in protected activity; 2) Kmart was aware of the protected activity; 3) Plaintiff thereafter experienced an adverse action; and 4) there was a causal connection between the protected activity and the adverse employment action.[22]

If the Plaintiff establishes a *prima facie* case, Defendant must articulate a legitimate reason for its action.[23] If Defendant articulates a legitimate reason for its action, the burden shifts back to Plaintiff to show that Defendant's explanation is a pretext.[24] Plaintiff bears the burden of persuasion to establish that Defendant's alleged reason was merely a pretext. To avoid summary judgment by a showing of pretext, Plaintiff must show more than mere disagreement as to

---

[20] Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997) (citing Goldman v. First Nat. Bank of Boston, 985 F.2d 1113, 1117 (Mass. 1993)); see also Knight v. Avon Prod., Inc., 780 N.E.2d 1255, 1262 (Mass. 2003).

[21] Knight, 780 N.E.2d at 1264 (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)).

[22] See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991); MacCormack v. Boston Edison Co., 672 N.E.2d 1, 8 (1996); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998); Fallon, 2002 WL 3167726, at *6.

[23] See McDonnell Douglas, 411 U.S. at 802-04.

[24] Id.; see also Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999); Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998) (quoting Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997)).

Defendant's articulated reason for the termination.[25]

A.      **<u>Age Discrimination Claims</u>**

In Counts I and III, Plaintiff alleges that Defendant committed age discrimination in violation of the ADEA and Chapter 151B.  Plaintiff arguably establishes a *prima facie* case for age discrimination.  Plaintiff asserts that his then-District Manager Jon Swank referred to him as "old bastard" and "old and fat" as recently as December 2003.  Plaintiff also alleges that Swank promoted three persons under forty years of age to the position of District Manager, but did not promote Plaintiff to this position despite his excellent evaluations.  Plaintiff further alleges that Swank played an instrumental part in the termination by not being completely forthcoming to the decision-makers about the Smart Plan incident.  The Court need not decide this issue because Plaintiff fails to show Kmart's reason for termination is merely a pretext.

The next stage of the McDonnell Douglas framework allows Kmart to put forth a legitimate reason for its action.  Kmart's articulated reason for terminating Plaintiff's employment is that Plaintiff was engaged in improper manipulation of his store's Smart Plan sales.  Kmart's Audit Services Department investigation showed that the Smart Plan conversion rate at Plaintiff's store prior to December 1, 2003 was poor, to suddenly increase between December 1 and December 12, 2003.  Statements made by Plaintiff's colleagues at Kmart show that Plaintiff's improper manipulation of Smart Plan warranty sales caused this sudden increase.[26]  Plaintiff ordered Kmart employees to purchase warranties on two stolen Kmart Cash Cards and to

---

[25] Williams v. Frank, 757 F. Supp. 112, 121 (D. Mass. 1991), aff'd, 959 F.2d 230 (1st Cir. 1992).

[26] See Def.'s Mem. in Supp. of Mot. for Summ. J., p. 5-9.

automatically ring in Smart Plans in customer transactions without customer consent.  Based on these facts, Kmart had a legitimate reason to terminate Plaintiff's employment.  Any presumption of unlawful conduct that may have been created by Plaintiff's *prima facie* case, therefore, disappears.[27]

To show pretext under the ADEA, Plaintiff must provide "sufficient evidence from which a rational fact-finder could have inferred both that [Defendant's] articulated reason was a pretext, i.e., 'obviously or manifestly unsupported,' . . . *and,* that its real reason for [terminating Plaintiff] was an age-based animus."[28]  The Court may infer age discrimination, and thus find pretext, if he or she does not believe the employer's reasons for termination.[29]

To show pretext under Chapter 151B, Plaintiff must present sufficient evidence that Kmart's reason for terminating him was not its real reason and that a jury could draw a "reasonable inference... that age was the determinative cause of the termination."[30]  As under the ADEA, under Chapter 151B the Court may infer pretext if it believes the employer's reason for termination is false.[31]

Plaintiff attempts to defeat summary judgment by analogizing his case with Cariglia v. Hertz Equipment Rental Corp., where the supervisor allegedly possessed a discriminatory based

---

[27] See Texas Dep't. of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981); Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 9 (1st Cir. 2001).

[28] Shorette, 155 F.3d at 15 (quoting Ruiz, 124 F.3d at 248); see Hidalgo, 120 F.3d at 335; see also St. Mary's Honor Soc'y v. Hicks, 509 U.S. 502, 511 (1993).

[29] See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147 (2000).

[30] Knight, 438 Mass. at 425-26.

[31] Lipchitz v. Raytheon, 751 N.E.2d 360, 366 (2001).

animus against the plaintiff and allegedly withheld information in the investigation that led to the plaintiff's termination. 363 F.3d 77, 88 (1st Cir. 2004). In Cariglia, however, the defendant relied solely on the biased supervisor's report when terminating the plaintiff.[32] Here, in contrast, Kmart interviewed Plaintiff and other cashiers and gathered independent evidence of Plaintiff's improper behavior before deciding to terminate Plaintiff. The distinction is fatal to Plaintiff's argument.

As to Plaintiff's ADEA claim, he must provide sufficient evidence for the Court to infer *both* that Kmart's reasons for termination were "obviously or manifestly unsupported," and that its real reason for terminating Plaintiff was age discrimination.[33] As to Plainitff's Chapter 151B claim, Plaintiff must provide sufficient evidence that Kmart's ostensible reason for terminating him was not its real reason, and that a fact-finder could not draw a "reasonable inference" of age discrimination as the determining factor in termination.[34] With both claims, Plaintiff's evidence lacks the required causation linking the alleged age discrimination to Plaintiff's termination. Kmart, in contrast, presents evidence from an investigation, interviews with employees, internal audit reports, and Plaintiff's own responses to the accusations against him to establish a legitimate reason for terminating Plaintiff. Plaintiff fails to provide evidence sufficient to defeat Defendant's explanation and infer pretext. Defendant's motion for summary judgment is ALLOWED as to Plaintiff's age discrimination claims.

**B.    Retaliation Claims**

---

[32] Cariglia, 363 F.3d at 80-82.

[33] Shorette v. Rite Aid of Maine, Inc., 155 F.3d at 8 (citing Ruiz, 124 F.3d at 248).

[34] Knight, 438 Mass. at 425-26.

**1. ADEA and Chapter 151B Claims**

Plaintiff alleges in Counts I and III that Kmart terminated his employment in retaliation for his complaints about not being promoted due to his age. Plaintiff concedes that Kmart has articulated a legitimate reason for his termination, but argues that he provides sufficient evidence of retaliation to show pretext. Plaintiff claims that he was terminated because his supervisor Swank had an age-based bias against him. Plaintiff alleges that Swank never recommended him for a promotion even though he was a "very good employee," that Swank made discriminatory remarks to him, and that three individuals under forty years of age were promoted ahead of him.

Plaintiff's retaliation claims fail because Plaintiff fails to establish a *prima facie* claim argument for discrimination. Plaintiff provides no evidence to suggest a causal connection between his workplace complaint and his termination. To "survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory."[35] Plaintiff made complaints to his supervisor in the spring of 1999, but did not file an charge with the Massachusetts Commission Against Discrimination until June 15, 2004. The five years that elapsed between the two events is too long of a time period for a reasonable factfinder to find a "causal connection" between Plaintiff's complaints and his termination.[36] No evidence presents any causal link between Plaintiff's discrimination complaint and termination. Plaintiff fails to make out a *prima facie* case for retaliation, and therefore, summary judgment is appropriate on Plaintiff's claims under the

---

[35] See Douglas v. J.C. Penney Co., Inc., 422 F.Supp.2d 260, 279 (D.Mass. 2006) (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 57 (1st Cir. 2000).

[36] See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (holding that the 20 month interval between protected activity and adverse action suggests "no causality at all").

ADEA and Chapter 151B.

### 2. FMLA and Workers' Compensation Claims

Plaintiff alleges in Counts II and IV that Kmart terminated him in retaliation for taking FMLA leave and for exercising his workers' compensation rights. The FMLA permits an eligible employee to take up to 12 weeks total of unpaid leave in a 12 month period for "serious" health conditions.[37] Plaintiff took close to 12 weeks of leave due to his back injury in December 2003. Plaintiff returned to work on March 1, 2004, at which time Kmart completed its inquiry into Plaintiff's role in the improper manipulation of Smart Card warranty sales. Plaintiff provide insufficient evidence to show a causal connection between FMLA leave and his termination from Kmart. Kmart furthermore has provided a legitimate and credible reason–that Plaintiff improperly manipulated Kmart Smart Card warranty sales–for terminating Plaintiff. Plaintiff's FMLA claim, therefore, fails.

Plaintiff's Chapter 151B retaliation claim also fails under Chapter 151B. Plaintiff must present sufficient evidence for a fact-finder to conclude that retaliated against him for taking workers' compensation leave and that such retaliation was the "determinative cause" for his termination.[38] Plaintiff alleges merely that he exercised rights under the Workers' Compensation Act, that his superviser frequently called him concerning his expected return, that his superiors "became angry" when Plaintiff could not return until his doctor gave approval, and that Kmart terminated Plaintiff. These allegations are insufficient to make the requisite showing that "but

---

[37] See 19 U.S.C. § 2612.

[38] See Lipchitz v. Raytheon Co., 434 Mass. 493, 504-05, & n.19 (2001) (liability can only attach when an adverse action is taken "because of" discrimination).

for" his filing for workers' compensation, Kmart would not have terminated Plaintiff's employment.[39]

Kmart furthermore has provided sufficient evidence to show that it fired Plaintiff because of Plaintiff's improper conduct. Given Kmart's explanation for Plaintiff's termination, the lack of evidence of retaliation, the absence of evidence that retaliation was the "determinative" cause of Plaintiff's termination, Plaintiff's retaliation claim must fail.

### III.   Conclusion

Plaintiff's claims for age discrimination and retaliation against former employer Kmart fail. Kmart has provided sufficient evidence to show that Plaintiff, as Store Manager, engaged in and directed improper sales of Smart Plan warranties. Kmart had a legitimate and credible reason for terminating Plaintiff, which Plaintiff has failed to defeat as pretext. This reason is not connected in any way to age, FMLA, or workers' compensation, and for the reasons stated above, Defendant's Motion for Summary Judgment on all counts in the above-captioned complaint is ALLOWED.

AN ORDER WILL ISSUE.

   /s/ Joseph L. Tauro   
United States District Judge

---

[39] See Fallon, 2002 WL 31677216, at *6 (finding that Plaintiff, relying on the closeness in time between her filing a workers' compensation claim and the denial of her disability benefits and subsequent termination, failed to "put forth sufficient facts such that a jury could reasonably find that but for her filing a workers' compensation claim, the defendants would not have denied her benefits and terminated her employment").